CHARLES RICHARDSON, *in Equity, versus* WILLIAM WOODBURY, *Executor.*

An executor, who is empowered by the will to sell the real estate of the testator, and distribute the proceeds thereof to legatees, is thereby invested with the title to such estate by necessary implication.

But the executor of such a will does not thereby derive any title to real estate held by the testator in trust.

A general devise of all the testator's real estate, will include estate held in trust, unless it clearly appears in the will that such was not the testator's intention.

Lands held in trust, unless generally or specifically devised by the testator, descend to his heirs.

From the limited equity powers of this court, a deed absolute and unconditional in its terms, cannot be regarded as a mortgage, although in fact made to secure the payment of a loan.

When the grantor in a deed absolute in its terms makes the conveyance to secure a debt due from him to the grantee, a resulting trust arises by implication of law. And if when the debt becomes due, or within a reasonable time thereafter, the amount is paid or tendered in payment, the grantee may be compelled to reconvey.

Or if before the debt becomes due the grantee sells the estate for more than the sum due him, the excess may be recovered in assumpsit.

But when the time specified for the payment of the whole debt secured by the conveyance has expired, or a reasonable time, where no specific time is named, the estate becomes absolute in the grantee, discharged of the trust.

Bill in equity for the redemption of a mortgage, in which it is alleged that on the second day of May, A. D., 1855, one Thomas Warren, of said Portland, was seized and possessed

of certain real estate, situated in said city of Portland, and conveyed the same to one Jonathan Tucker, then of said Portland, and since deceased; that said conveyance, though absolute in form, was in reality made to secure to the said Tucker the payment of certain demands held by the said Tucker against the said Warren; that the said Tucker never took actual possession of the said premises, but permitted the said Warren to retain possession, and to receive the rents and profits thereof, and that he, the said Warren, has thus been in possession of said premises, and received the rents and profits thereof from the time of said conveyance to said Tucker, to the time of his conveyance of the same to the plaintiff; that the said Tucker, afterwards being summoned as Trustee of the said Thomas Warren and William W. Woodbury, made his disclosure, in writing, in said action, and therein admitted and stated that the said property was conveyed to him by said Warren, as security for said indebtedness as aforesaid.

And your orator further alleges, that said Tucker, on the thirty-first day of July, 1856, died, having before that time, to wit: On the third day of May, A. D., 1849, made and executed his last will and testament. And also having, on the eighteenth day of May, A. D., 1855, made and executed a codicil annexed to said will and testament; that the said Tucker, by the first clause in the said codicil annexed to said last will and testament, discharged and relinquished all such indebtedness secured by said conveyance as aforesaid, whereby said property became and was freed from all incumbrance, by reason of said indebtedness to said Tucker.

And the defendant answering, wholly denies that, by the first clause of said codicil, or by the whole or any part thereof, the said Tucker discharged or relinquished all, or any portion of the indebtedness by the demands secured or paid by the conveyance aforesaid, except as is hereinafter stated, or that all, or any portion of the real estate and property, conveyed thereby, became freed or discharged from all or any portion of the supposed incumbrance thereon, arising

from the demand paid or secured by such conveyance, as aforesaid, and the indebtedness thereon to said Tucker, and to his estate; and avers and alleges that the same has been ever since, and now is, held as security for such indebtedness, or in payment thereof, and to be held and disposed of by this defendant, as executor as aforesaid, according to the will and codicil of the said Tucker, and the provisions thereof, and under the laws of the state.

*Fessenden & Butler, and Shepley & Dana,* solicitors for complainant.

*Howard & Strout, and W. Goodenow,* solicitors for respondent.

DAVIS, J. On the third day of May, 1849, Jonathan Tucker made his will, in which he bequeathed the sum of four thousand five hundred dollars to Thomas Warren, " out of the money he might be owing at the time of his (Tucker's) decease." He also made said Warren one of his residuary legatees, to whom, after making a large number of specific bequests, he devised "all the rest and residue of his estate." And he appointed William Woodbury, the defendant, executor of said will. Warren, at this time, was indebted to Tucker to the amount of about $5,600.

The indebtment of Warren to Tucker was afterwards increased to about $16,000. To secure a part of this, being two notes on which was due about $5,500, on the second day of May, 1855, he gave to Tucker a mortgage deed of certain real estate in Portland. And on the same day he gave Tucker a warranty deed of certain other real estate, the consideration named in the deed being five thousand dollars. This deed, though absolute in form, appears, by a disclosure in writing subsequently made by said Tucker, to have been given and received, " as security " for the balance due from Warren, besides the two notes secured by the mortgage.

On the 18th day of May, 1855, Tucker made a codicil to his will, in which he directed the sum of four thousand five hundred dollars bequeathed to Thomas Warren to be paid to

him "without reference to any unadjusted claim against him;" and by this codicil he "discharged and relinquished all such unadjusted claim" he might have against said Warren, at the time of his (Tucker's) decease.

He also, in this codicil, directed his executor "to sell all his real estate not specifically devised," and distribute the proceeds thereof to the residuary legatees named in the will.

Tucker died on the thirty-first day of July, 1856; and the defendant accepted the trust to which he was appointed, as executor of his last will and testament.

Thomas Warren, after the decease of Tucker, claimed that the real estate conveyed by him to Tucker by his warranty deed of May 2d, 1855, was held by said Tucker only "as security" for his (Warren's) indebtment to him; that the whole of that indebtment was "discharged and relinquished" by said Tucker, by the codicil to his will; and that said estate should be reconveyed to him. On the 7th day of October, 1856, he conveyed his interest therein to the plaintiff, who prays this court to decree, "that the said conveyance from Warren to Tucker was a mortgage; that the debt secured thereby has been fully released and discharged; and that said Woodbury, as executor, release and convey all title, interest, and claim in and to the premises, to him."

Assuming that Tucker, at the time of his decease, held the title to this estate in trust; and that he, in his will, discharged the debt which it was intended to secure; can this bill in equity, for the release of the title be sustained *against the executor?*

A general devise of all the testator's real estate, will include estate held in trust, unless it clearly appears elsewhere in the will that such was not the testator's intention. Jackson v. Delancey, 13 Johns. R., 537; 1 Jarman on Wills, 638. Tucker devised "all the rest and residue of his estate" to certain persons named in his will. By this devise, the residuary legatees might have taken the estate in controversy, charged with whatever trust was attached to it in the hands

of Tucker. But by the codicil, the testator so far revoked his will that these legatees were to take, not the estate itself, but the proceeds of it, when it should be sold by the executor. It is very clear, therefore, that the title to the estate did not pass to the residuary legatees.

By the codicil, the executor was authorized " to sell all the real estate," " to make good and sufficient deeds thereof," and " to distribute the proceeds thereof to the residuary legatees." This vested the title to such estate in the executor, by necessary implication. Deering v. Adams, 37 Maine R., 264. But it vested no title in the executor except to that estate the proceeds of which the testator designed to have distributed to his legatees. It could not have been his intention to direct the sale and distribution of any estate held in trust. The title of the executor, being only implied from, and necessarily limited by, his authority to sell, if this estate was held in trust, he has no interest in it which he can release. If Tucker held any estate in trust, at the time of his decease, the title descended to his heirs, and they only can release it.

The present controversy appears to be an amicable one, both parties alike desiring a judicial determination of their rights. And we have been requested, if the bill cannot be sustained against the executor, to make such a disposition of it that an amendment may be allowed, and the proper parties be summoned to answer. We therefore proceed to consider the other questions that have been presented.

The plaintiff alleges in his bill, and the defendant admits in his answer, that the deed given by Warren, though absolute and unconditional, was intended only as security for his indebtment to Tucker ; and the plaintiff prays that said conveyance may be decreed to be a mortgage. The power of this court in regard to mortgages is limited to " suits for the redemption or foreclosure of mortgaged estates." R. S., chap. 96, sec. 10. It is believed that this has always been understood to apply to those conveyances only which are legal mortgages. No power is conferred by statute,

and we think none has ever been exercised, over merely equitable mortgages. Whenever application has been made for relief by parties not within the express terms of the statute, for the redemption of estates actually mortgaged, unless it could be granted on the ground of trust, or fraud, it has always been denied, on account of "the limited equity powers of the court." Gardiner v. Gerrish, 23 Maine R., 46; Shaw v. Gray, Ib., 174.

In the case of Thomaston Bank v. Stimpson, 21 Maine R., 195, the court was called upon to regard as a mortgage a deed " absolute and unconditional in its terms, but made, in fact, to secure the payment of a loan." Whitman, C. J., in declaring the opinion of the court, says: " No doubt can be entertained but that a court having general equity jurisdiction would regard such a conveyance as a mortgage. But the statute of this state concerning mortgages has entrusted this court with very limited powers on this subject, and is specific as to the cases in which a right of redemption shall remain to the grantor beyond the time stipulated in the mortgage. In the case of mortgages of this description, no such right is saved to him; and when the time stipulated for the payment of the money had elapsed, and the payment had not been made, the estate became absolute in the grantee."

The case of Howe v. Russel, 36 Maine R., 115, has been cited, as sustaining a different doctrine. It is said in that case to have been " determined at a former hearing, that the deed, though absolute in its terms, constituted a mortgage." We have no report of the " former hearing;" but the power of the court seems not to have been questioned. The debt secured by the conveyance had been wholly paid; and the bill alleges that the conveyance was made " to defraud the creditors " of the grantor. It is not necessary, therefore, to conclude that the power of the court was exercised in violation of principles that had hitherto been regarded as settled.

But if the deed from Warren cannot be regarded as a mortgage, it is said that Tucker, in his written disclosure,

and the defendant, in his answer, admit that it was received by Tucker *in trust*, to secure the payment of the amount due to him from Warren. And the case of the Unitarian Society v. Woodbury, 14 Maine R., 281, has been cited to show that " a trust need not be *created* in writing, but it is sufficient if it *be proved* in writing." By the statute of frauds of 29 Charles, II., chap. 3, sec. 7, all trusts were required to be " manifested and proved by some writing, &c." Under this statute it is well settled that it is sufficient if there be " written evidence " of the trust. 1 Greenl. Ev., sec. 266.

The statute of Massachusetts of 1784, regulating uses and trusts, was a transcript of the English statute,—the third section containing the same provision—that trusts should be " manifested and proved by some writing, &c." But at the time of our separation, in 1821, this third section was omitted, in the revision of the statutes for this state. Mr. Greenleaf, in a note to the case of Bishop v. Little, 3 Greenl. R., 405, suggested that the Massachusetts statute might be regarded as still in force here, notwithstanding this omission. And there are indications that this court entertained that opinion. Evans v. Chism, 18 Maine R., 220. Whether this was so, or not, is of no importance now. For when the statutes were revised in 1840, this third section of the act of 1784 was revived.

But by the Revised Statutes, chap. 91, sec. 31, all trusts concerning lands are required to be " manifested *and created* by some writing, signed by the party, &c." This has made a most important change from the statute of 1784. It is not pretended that any trust was *created* by any writing in the case now before us, such as would bring it within the equity jurisdiction of this court.

It is true, however, that the third section of the statute of 1784, and the thirty-first section of chapter ninety-one of the Revised Statutes, both of them expressly except all " trusts which arise or result by implication of law." That resulting trusts are within the equity jurisdiction of

this court, and that they may be proved by parol, even in opposition to the terms of a deed, cannot be questioned. Buck v. Pike, 11 Maine R., 9 ; Baker v. Vining, 30 Maine R., 121. Thus where one man provides the purchase money, and another buys land with it, taking the deed to himself, the law implies that the latter holds the estate in trust for the former, and he may be compelled to convey it accordingly. Dwinal v. Veazie, 36 Maine R., 509. So when a grant, without consideration, was held to be made in trust, for the use of the grantor, this was held to be a resulting trust, within the terms of the exceptions in the statute and so provable by parol. 2 Story's Eq., sec. 1198.

In the case before us it is proved and admitted that the deed from Warren to Tucker, though absolute and unconditional in its terms, was given and received as security for the indebtment of the former. We cannot doubt but that the latter held the estate in trust for that purpose—a trust " resulting by implication of law." If, when the debt became due, or within a reasonable time, Warren had paid or tendered to Tucker the amount due, the latter could have been compelled to reconvey. Or if Tucker had afterwards sold the estate for more than the sum due to him, Warren could have recovered the surplus in assumpsit. Richards v. Allen, 8 Pick., 405. It becomes necessary, therefore, to consider the position of the parties, their rights, and liabilities, at the time when the will was made, and when the testator died.

If there had been a time specified when the whole debt secured by the conveyance was to be paid, there being no right of redemption, the estate would have vested absolutely in Tucker when that time had elapsed. Thomaston Bank v. Stimpson, 21 Maine R., 195. But the larger part of the debt had already been standing more than six years when the deed was made, on the second day of May, 1855. In the absence of any express agreement, Warren would have had a reasonable time during which to save his rights, and redeem the estate, by paying the whole debt. The testator

lived for more than a year afterwards, until July 31, 1856; and yet Warren did not pay the debt. Allowing the trust to continue for a reasonable time, we think that it expired, by the laches of Warren, before the decease of Tucker. When the trust thus expired, the estate then became the property of Tucker, discharged of the trust; and it then operated as a payment upon the indebtment of Warren to the amount of its value. Tucker could then have disposed of the estate by deed; and it would pass, unincumbered by any trust, in a general devise in his will.

A question similar, in most respects, to this, was before the court in the case of Fales v. Reynolds, 14 Maine R., 89. And it was there held that an absolute deed, given in fact as security for a debt, could not be regarded as a mortgage; but that, the debt not being otherwise paid as the parties had agreed, such conveyance then operated as a payment, and extinguished the debt to the amount of its value—like a mortgage, when the equity of redemption has expired.

Such, we think, was the effect of the deed from Warren to Tucker, after a reasonable time had elapsed, and he had neglected to pay the debt. Warren must have so intended, or he would have given two mortgage deeds, instead of making one of his deeds a mortgage, and the other an absolute deed, though they were both made at the same time. And that Tucker so regarded it, is evident from the language employed in the codicil to his will, by which he " discharged and relinquished all his unadjusted claim against Warren." The term " unadjusted," as applied to a demand, signifies that the amount is uncertain—not agreed upon. Before the deed of Warren to Tucker operated as a payment, by the expiration of the trust, the amount of Warren's indebtment was certain; it had been adjusted. But this payment, the value of the estate not being agreed upon, left the amount of Tucker's claim remaining unpaid uncertain, unadjusted. Tucker anticipated this in the codicil to his will; and this unadjusted balance, and this only, if not paid before his decease, we think he intended to discharge. The estate became

vested in him absolutely before his decease; and if the title passed to the executor by the will, it was only for the purpose of sale and distribution to the residuary legatees. The plaintiff took nothing by his deed from Warren, and the bill must be dismissed, with costs for the defendant.

APPLETON, J. The testator by codicil discharged and relinquished whatever " unadjusted claim" he had against Warren. By this release of unadjusted claims, he referred only to the balance which might remain upon and after adjustment, and nothing more. He could not have intended to release his *entire* debt, and leave in full force any counter claim which Warren might have. Neither could it have been his design to discharge his debt, and leave his estate liable to reconvey land, the title of which was in him by deed of warranty. By his will he had bequeathed Warren forty-five hundred dollars " out of the money he might be owing at the time of his (Tucker's) decease." By his codicil he directed this sum to be paid him " without reference to any unadjusted claim against him." The mortgage he held against Warren he gave his wife, and directed his real estate to be sold, and made specific disposition of the proceeds among his residuary devisees. There is nothing in the will or in the surrounding circumstances from which an inference can be drawn of any intention to bequeath to Warren the real estate in controversy, but rather the reverse. It is clear to my mind, that Warren derived no right under the will to the premises in dispute, and that this claim is equally devoid of legal or equitable right. Whether therefore the rights of an equitable mortgagee will be protected and enforced by this court is not necessarily before us, nor is it involved in the determination of this case, and upon this point I intend to express no opinion.

*Bill dismissed.*